UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Respondent,<br><br>     v.<br><br>DAVID A. NEAL,<br><br>            Movant. | No. 2:10-cr-0158 GEB KJN P (TEMP)<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Movant is a federal prisoner, proceeding pro se, with a motion to vacate, set aside or correct his sentence filed pursuant to 28 U.S.C. § 2255. On October 29, 2010, movant pled guilty to one count of possessing one or more matters containing visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). (See Dkt. Nos. 18 & 29.) On April 1, 2011, he was sentenced to a term of eighty-four months imprisonment, a supervised release term of life and a $100 special assessment. (See Dkt. Nos. 28 & 29.)

I. Procedural Background

In November of 2011, movant filed his initial motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. On January 5, 2012, movant was ordered to file an amended motion on the proper form and sign it under penalty of perjury within thirty days. (See Dkt. No. 35.) On March 1, 2012, movant filed an amended motion to vacate, set aside or correct his sentence. (See Dkt. No. 39.) On March 7, 2012, respondent was ordered to file and

1

serve a response to movant's amended motion.  (See Dkt. No. 40.)

On June 11, 2012, movant filed a motion for leave to amend his § 2255 motion. (See Dkt. No. 44.) On June 21, 2012, movant's motion for leave to file a second amended § 2255 was granted and he was ordered to file a second amended § 2255 motion within thirty days. Respondent was ordered to file a response to movant's second amended § 2255 motion within sixty days of service of that second amended § 2255 motion.

Movant then requested an extension of time to file a second amended § 2255 motion which was also granted. (See Dkt. Nos. 52 & 53.) Movant filed his second amended § 2255 motion (labeled on the court's docket as a third amended motion to vacate) on August 27, 2012.

Respondent has filed a motion to dismiss respondent's § 2255 action, arguing that the operative pleading (the third § 2255 motion) is barred by the applicable statute of limitations and that the previous petitions for habeas relief are procedurally defaulted. For the reasons discussed below, the undersigned recommends that such motion be granted.

II.  Analysis

A person in custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The permissible grounds for a motion under § 2255 are "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." Id. Relief under § 2255 should be granted only where "a fundamental defect ... inherently results in a complete miscarriage of justice," presenting "exceptional circumstances that justify collateral relief...." Davis v. United States, 417 U.S. 333, 345 (1974), citing Hill v. United States, 368 U.S. 424, 428–29 (1962).

A.  Timeliness

As an initial matter, respondent's original § 2255 motion, filed November 23, 2011, is not in any way operative in this case. As a general rule, an amended habeas petition supersedes the original. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once a petitioner files an amended petition, the prior petition no longer serves any function in the case. Indeed, in this case, the court

has already stated in a previous order that "the operative pleading in this case is movant's third amended motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 … [filed on] August 27, 2012." (Order (ECF No. 60) at 2.) The only relevance the initial § 2255 motion might retain in this case would be if the subsequent § 2255 motion – that is, the second motion – had been filed beyond the applicable one-year statute of limitations and petitioner sought to avoid that bar by "relating back" to the original motion. But that kind of timing argument is not in play here: the government concedes, because it is clear, that the second motion to vacate petitioner's sentence was also timely filed on March 1, 2012.

Instead the government argues that the operative motion for habeas relief, filed August 27, 2012, is time-barred. The government is correct. Under 28 U.S.C. § 2255(f)(1), movant had one year from the date on which his judgment of conviction became final in which to file a habeas challenge to his conviction or sentence. Where, as here, a criminal defendant did not pursue a direct appeal, the judgment against him is final once the time to appeal has expired. See United States v. Schwartz, 274 F.3d 1220, 1223 (9th Cir. 2001). Although respondent marks the date of final judgment at April 24, 2011, in fact the trigger date is April 29, 2011: the court entered judgment against the movant on April 14, 2011 (ECF No. 29), and beginning the next day he had fourteen calendar days in which to file a notice of appeal. See Federal Rules of Appellate Procedure 4(b)(1)(A)(i)[1] and 26(a)(1). The movant never filed a notice of appeal, so the one-year limitations period started to run on "the date on which the judgment of conviction bec[ame] final" – here, fourteen days after the entry of judgment in district court, on April 29, 2011. 28 U.S.C. § 2255(f)(1). The time to file a motion under § 2255 thus expired at the end of the day on April 28, 2012. Movant filed his third § 2255 motion on August 27, 2012, approximately four months too late.

////

---

[1] It appears respondent calculates the trigger date using the old ten-day window for filing a notice of appeal from a criminal conviction. However, starting in 2009, the time for appeal was (and still is) fourteen days. See Fed.R.App.P. 4 advisory committee notes (2009); Estrada-Ambriz v. U.S., No. 1:10-cr-0252-LJO, 2012 WL 3879925 at * 2 (E.D.Cal. Sept. 6, 2012) (stating that after defendant's judgment of conviction was entered on September 2, 2010, he "had 14 days to file his notice of appeal").

3

Under some circumstances, a § 2255 movant may avoid the limitations bar on a claim if it "relates back" to a claim in a timely-filed motion. "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." Mayle v. Felix, 545 U.S. 644, 650 (2005). See also U.S. v. Crawford, Nos. 1:02-cv-6498 OWW, 1:96-cr-5127 OWW, 2009 WL 453049 at *3-4 (E.D.Cal. February 22, 2009) (applying Mayle to a motion to vacate under § 2255).

Here, the untimely § 2255 motion alleges four grounds for relief:

> (1) actual innocence;
>
> (2) movant's defense attorney agreed to continuances totaling 177 days, an excessive duration that violated the Speedy Trial Act and weakened movant's resolve so that he finally pled guilty;
>
> (3) the defense attorney's neglect of movant's case, including inadequate investigation, failure to move to suppress evidence, and infrequent communication with the defendant; and
>
> (4) movant's plea was not knowing, voluntary or intelligent because his long period of pre-trial detention triggered an incapacitating level of post-traumatic stress disorder (PTSD).

Each of these claims must relate back to one of the claims alleged in the second, timely § 2255 motion in order to avoid the one-year limitations bar. That motion alleges the following grounds:

> (1) movant was mentally incapacitated by medication on the day of his arrest, such that any statement or evidence obtained from his arrest is inadmissible;
>
> (2) the government employed "spy technology" that violated the movant's right to privacy;
>
> (3) the court's sentence of supervised release for life exceeded the statutory maximum;
>
> (4) the term of supervised release also violates movant's civil rights.

(ECF No. 39.)

None of the claims averred in the third § 2255 motion relates to any of the claims in second § 2255 motion or the first. Furthermore, as discussed below, even if there were some basis on which to relate one of the untimely claims back to the timely-filed motion, it would avail

the movant nothing because he has never sought direct review of his conviction or sentence on appeal. On that basis, all of the movant's claims should be dismissed.

B. Procedural Default

As with every other type of § 2255 claim, "a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal quotations omitted). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Id. However, the rule requiring exhaustion on direct appeal "is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro v. United States, 538 U.S. 500, 504 (2003). Thus courts have created exceptions to requiring a defendant to seek relief on appeal before he files a motion under § 2255 – namely, where a movant can demonstrate "cause and prejudice or actual innocence in response to the default." U.S. v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003) (citing Bousley, 523 U.S. at 622).[2] Here, the movant has asserted claims that implicate both exceptions.

The United States Supreme Court has, on several occasions, assumed without expressly deciding, that a "freestanding" claim of actual innocence is cognizable on federal habeas review. See House v. Bell, 547 U.S. 518, 554–55 (2006); Herrera v. Collins, 506 U.S. 390, 417 (1993). The Ninth Circuit has also assumed that freestanding actual innocence claims are cognizable on collateral attack. See, e.g., United States v. Berry, 624 F.3d 1031, 1038 n. 5 (9th Cir. 2010) ("This circuit recognizes a claim of actual innocence that is cognizable under § 2255."); Carriger v. Stewart, 132 F.3d 463, 476–77 (9th Cir. 1997) (en banc). However, the standard of proof for establishing actual innocence is "'extraordinarily high.'" Carriger, 132 F.3d at 476 (quoting Herrera, 506 U.S. at 417). To prevail, a petitioner "must go beyond demonstrating doubt about his guilt and must affirmatively prove that he is probably innocent." Id. See also Cooper v.

---

[2] The "cause and prejudice" exception revives only defaulted constitutional claims, not non-constitutional errors in sentencing. See United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994). Therefore movant's challenge to his term of supervised release is procedurally defaulted for his failure to attack it first on direct appeal.

Brown, 510 F.3d 870, 923 (9th Cir. 2007) ("Under these standards, a petitioner must affirmatively prove that he is probably innocent."); Boyde v. Brown, 404 F.3d 1159, 1168 (9th Cir. 2005) (same).

A claim of ineffective assistance of counsel (IAC) may stand as cause for a procedural default. See Massaro, 538 U.S. at 504-05, 509. In fact, the Supreme Court has said that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." Id. at 504. Still, an IAC claim must be meritorious to except a habeas petitioner or movant from the traditional requirement that he exhaust his claims on appeal.

The elements for an IAC claim are well known:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Strickland v. Washington, 466 U.S. 668, 687 (1984). "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. A defendant claiming ineffective assistance of counsel bears the burden of establishing counsel's performance as unreasonable. It is a fairly high threshold of proof, since a court must presume "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Id. at 689. "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Branch v. Yates, 2010 WL 463 0258 at *13 (E.D.Cal.) (citations omitted).

It also is movant's burden to establish prejudice in an IAC claim: "A defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

The Strickland test applies when a habeas petitioner or movant seeks to vacate his guilty plea based on alleged ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). The first prong of the test for IAC in a guilty plea follows exactly the same standard as stated above – that is, the court asks whether counsel's conduct and judgment were within the wide range of reasonable assistance. "[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., Evans v. Meyer, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). [T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." [Strickland,] 466 U.S. at 695.

Id. at 59-60. In deciding a § 2255 claim of ineffective assistance of counsel in the context of a guilty plea, a district court may rely on the court record, including transcripts of the plea and sentencing hearings, in lieu of holding a live hearing on the claim. U.S. v. Shah, 878 F.2d 1156, 1160 (9th Cir. 1989).

In this case, the movant has framed the "prejudice" prong of his IAC claim according to

the above standard, arguing that his counsel withheld discovery materials until well after judgment and that if he had seen that information earlier, he never would have pled guilty. (See Motion (ECF No. 54) at 26-29.) He also intertwines his IAC claim with his assertion of actual innocence, going so far as to say that "no credible evidence definitively identifying petitioner of any wrongdoing has ever been presented by anyone at any time. No facts point to petitioner committing any criminal offenses." (Id. at 26.)

The court finds it is exceedingly unlikely, if not incredible, that any quantity or quality of evidence would have persuaded the movant to go to trial instead of pleading guilty. Furthermore, even if he had pressed ahead to a trial, the movant's chances of obtaining an acquittal or a lighter sentence would have been virtually non-existent – and thus his allegation of actual innocence falls well short of that claim's very high standard of proof. Likewise, any assertion that movant did not enter a knowing and voluntary change of plea is entirely implausible. The movant's own statements and his attentive participation at the plea colloquy provide the most convincing basis for these conclusions:

> THE COURT: … [The prosecutor is] going to make a representation concerning the facts the government would be prepared to prove at trial. When she's done, I will ask you if you agree with everything she has stated.
>
> …
>
> THE DEFENDANT: I'm prepared, Your Honor.
>
> THE COURT: Okay. Go ahead.
>
> MS. PRINCE [the prosecutor]: Thank you, Your Honor.
>
> On June the 9th, 2009, the Fairfield Police Department Major Crimes Unit executed a search warrant of Mr. Neal's residence …
>
> At the time of the search warrant, Mr. Neal owned a tower computer hard drive, a Dell XPS laptop, and a Dell Inspiron laptop. The tower hard drive and the two laptops contained child pornography as defined by 18 USC 2256. It was produced using materials which had been transported in interstate or foreign commerce, in and affecting interstate and foreign commerce.
>
> Initially, Mr. Neal admitted to possessing child pornography, but then suggested that a virus or his children were responsible for the images that were on his computer. Mr. Neal

8

knowingly possessed approximately 73 images and 289 videos of child pornography that were contained on the hard drives belonging to the tower computer, his Dell XPS laptop, and Dell Inspiron on June 9, 2009.

THE COURT: Do you agree with what the prosecutor just said?

THE DEFENDANT: One moment, Your Honor.

THE COURT: Okay.

(Discussion held off record.)

MS. NEGIN [defense counsel]: Your Honor, I think there was one – one of the laptop computers did have child pornography on it, the child pornography was in – had been basically deleted on the computer and was in unallocated space. I think that Mr. Neal was not necessarily aware that there was presently at the time on June 9th child pornography on that one laptop. He agrees to the forfeiture, but he also agrees that the hard drive and the other laptop did have child pornography, and that he knew about the child pornography, and possessed it intentionally on one of those two computers.

I don't think it changes anything for the purposes of accepting responsibility. He agrees to the number of images, and the number of videos.

THE DEFENDANT: I agree. Your Honor, may I speak?

THE COURT: Yes.

THE DEFENDANT: Your Honor, in regards to these charges, the particular laptop was in for repair, I had no – when it was shipped back to me, I had no idea what condition it was in at the time. The one laptop. That's all I have to say about that, your honor. The rest of it is my responsibility.

MS. PRINCE: Your Honor, I don't think fundamentally it alters the factual basis in terms of taking a plea in this case, but it could affect sentencing.

And the reason I say that is because by asserting that child pornography was only on one laptop, it changes the forensic analysis that I have provided defense counsel with, and also that I have in front of me today, that the forensic showed that the child pornography was found on all of the hard drives. Whether it was unallocated space or allocated space is kind of splitting hairs, but there was child pornography found, as it states in the – in the factual basis, on all three hard drives.

MS. NEGIN: And we don't dispute that. We don't dispute the forensic results that there was, in fact, child pornography on that laptop. Mr. Neal is just saying that on June 9th, he was not aware of

1   the condition of that laptop.

2   THE COURT: I'm not sure what's referenced by "that laptop." The record probably reflects it, but now I'm wondering about the facts that underlie the plea.

3

4   MS. NEGIN: I can be more specific, Your Honor.

5   He knew on June 9th of 2009 that there was child pornography on – and possessed that child pornography on the tower computer hard drive and the Dell XPS laptop. It's the Dell Inspiron laptop that he at that time was not certain of.

6

7

8   But I have seen the forensic report, and I agree that the government could prove at trial that the Dell Inspiron laptop had child pornography on it. And I do believe that with respect to sentencing the important thing is going – what counts is the numbers, and we don't dispute the numbers as Ms. Prince stated them.

9

10

11   …

12   THE COURT: … I could ask your client to tell me what he did and why he is pleading guilty. It appears that something else I could consider doing is reading what the government wrote and deleting the reference to the Dell Inspiron laptop on page 1, and also that reference on page 2, and ask your client if that's true.

13

14

15   So, what is your preference?

16   MS NEGIN: Your Honor, that would be my preference, the second option[.]

17

18   THE COURT: Does the government have a preference?

19   MS. PRINCE: Your Honor, I would object to the first page being – the Dell Inspiron laptop being deleted, specifically on the first page, because the defendant did own all three of those laptops. However –

20

21   THE COURT: Let me ask you this: Is there a modification you could make that is satisfactory to you that recognizes what the defense has objected, and then you could read that into the record?

22

23   MS. PRINCE: Yes, your honor.

24   THE COURT: Okay. Thank you.

25   MS. PRINCE: The modification that the government could make is that Mr. Neal knowingly possessed approximately 73 images and 289 videos of child pornography that were contained on the hard drives belonging to the tower computer and his Dell XPS laptop. A further forensic analysis located child pornography on the Dell Inspiron on June the 9th, 2009.

26

27

28

      THE COURT: Do you agree with what the government just stated?

      THE DEFENDANT: Yes, I do.

      THE COURT: Okay. How do you now plead to the charges in the indictment, guilty or not guilty?

      THE DEFENDANT: Your Honor, it is my responsibility. I'm a man of pride and a man of honor, and I take responsibility for this crime, and I plead guilty to the crime based on my beliefs.

      THE COURT: Do you agree to forfeit whatever is set forth in the indictment that the government says you're supposed to forfeit?

      THE DEFENDANT: Yes sir, I do.

(Transcript, Change of Plea Hearing (ECF No. 87-1) at 16-22.)

   The movant now claims that there were flaws in the government's computer forensic evidence that, if properly disclosed to him by his defense counsel, would have led him to keep his not-guilty plea and proceed to trial. However, the transcript of the plea colloquy amply demonstrates that when movant appeared in court to change his plea, he understood and appreciated the gravity of the government's evidence that he knowingly possessed child pornography in violation of federal law. It is just as apparent that the movant had a clear understanding of what the government's weaknesses would have been had he chosen to force the government to prove its case beyond a reasonable doubt at trial. In fact, it is not an exaggeration to say that the defendant was instrumental in negotiating a beneficial modification in the statement of facts to which he pled guilty. Moreover, the movant prompted the exchange that led to that modification by stating his own objection, which his counsel then bolstered on his behalf, showing he was wholly cognizant of the factual details of the case against and wholly able to respond intelligently to the government's presentation.

   It is altogether incredible, therefore, that any factual information that movant's counsel failed to discover or give to the movant would have made any difference in the movant's decision whether to plead guilty, much less in his chances of avoiding a conviction at trial. See Hill, supra. The movant's representation of actual innocence now, arguing that "no credible evidence definitively identifying petitioner of any wrongdoing has ever been presented by anyone

11


at any time," is equally incredible.  The movant's own participation and acceptance of responsibility at the change-of-plea hearing shows that he knows the opposite is true.

### C. Conclusion

To comport with the guarantees of due process, a guilty plea must be voluntary and intelligent.  Boykin v. Alabama, 395 U.S. 238, 242 (1969); United States v. Butcher, 926 F.2d 811, 817 (9th Cir.1991).  The accused must be aware of the elements of the charges against him, the constitutional rights he is waiving by pleading guilty, and the possible punishment he faces.  Boykin, 395 U.S. at 242-43.  "To have a plea set aside on a section 2255 petition, the petitioner must show that the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  United States v. Weaver, 265 F.3d 1074, 1077 (D.C.Cir. 2002) (quotation marks and citations omitted).  There was no such fundamental defect in the plea hearing in this case.  To the contrary, the court finds that the movant's clear appreciation of the government's case against him, not to mention his insistence on accepting responsibility of the basic charge of possessing child pornography, obviates any plausible claim of ineffective assistance of counsel as an exception to movant's failure to pursue a direct appeal before bringing his collateral attack under § 2255.  The same is true of any claim of actual innocence that movant asserts as an exception to that procedural default.

Accordingly, IT IS HEREBY ORDERED that:

1. Movant's motion for additional time (ECF No. 112) is moot.  Movant's response to the motion to dismiss is deemed timely filed.

2. Movant's motion to expedite a recommendation (ECF No. 116) is moot.

IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 87) be granted.

2. Movant's motions for default judgment (ECF No. 82) and to dismiss the indictment (ECF No. 84) be denied.

3. The Clerk of the Court be directed to close the companion civil case, No. 2:11-cv-3132 GEB KJN P (TEMP).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 3, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

neal0157.257